IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Jami M., ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | Case No. 3:20-cv-50455 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Martin O'Malley, ) | |
| Commissioner of Social Security, ) | |
| ) | |
|     *Defendant*. ) | |

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Jami M. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her application for supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

### I. Background

    On December 20, 2017, Plaintiff protectively filed an application for supplemental security income, alleging a disability beginning on April 1, 2016, because of attention deficit hyperactivity disorder, bipolar disorder, posttraumatic stress disorder ("PTSD"), degenerative disc disease, and arthritis. R. 107, 305. Plaintiff was 46 years old at the time she filed her application.

    Following a hearing, an administrative law judge ("ALJ") issued a decision on February 27, 2020, finding that Plaintiff was not disabled from the date of her application through the date of the decision. R. 144–66. The ALJ found that Plaintiff had the following severe impairments: migraine headaches; degenerative disc disease of the lumbar spine; degenerative joint disease and meniscal tear of the right knee; left hip trochanteric bursitis; obesity; attention deficit hyperactivity disorder; major depressive disorder; bipolar disorder; borderline personality disorder; generalized anxiety disorder; and PTSD. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with certain restrictions. The ALJ determined that Plaintiff could not perform her past relevant work, but that there were

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 6.

1

other jobs that existed in significant numbers in the national economy that she could perform, namely sedentary, unskilled jobs.

After the Appeals Council denied Plaintiff's request for review on October 9, 2020, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted); s*ee also Warnell*, 97 F.4th at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

## III. Discussion

Plaintiff challenges the ALJ's decision as it relates to her mental health impairments. Specifically, Plaintiff argues that the ALJ: (1) improperly rejected the opinion of his treating psychiatrist; (2) improperly evaluated her paragraph B criteria; and (3) failed to fully account for her deficits in concentration, persistence, or maintaining pace in the RFC.

**A. Medical Opinion**

Plaintiff argues that the ALJ improperly discounted the opinion from his treating psychiatrist, Dr. Michael Kuna. As set forth below, the Court finds no error in the ALJ's evaluation of Dr. Kuna's opinion.

Because Plaintiff's claim was filed after March 27, 2017, the ALJ was required to evaluate Dr. Kuna's opinion under the regulations set out in 20 C.F.R. § 416.920c. Under these regulations, the ALJ evaluates the persuasiveness of all medical source opinions using the following factors:

supportability, consistency, relationship with the claimant, specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 416.920c(c). Supportability and consistency are the most important factors to be considered in evaluating how persuasive an ALJ finds a medical source's medical opinions, and as a result, an ALJ must discuss how she considered those factors. 20 C.F.R. § 416.920c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022).

For a medical opinion to be supportable, it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. § 416.920c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* For an opinion to be consistent, it must be consistent with the record. 20 C.F.R. § 416.920c(c)(2). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*.

On September 21, 2018, Dr. Kuna submitted a medical source statement relating to Plaintiff's mental impairments. R. 710–11. Dr. Kuna opined that Plaintiff's bipolar disorder and PTSD caused marked limitations in all four of the paragraph B criteria, namely understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. He further opined that Plaintiff would be absent from work 4 days per month and would be off task 30% or more throughout the workday. Dr. Kuna explained that Plaintiff suffered from rapid mood swings and displayed inappropriate behaviors such as crying and yelling at others. He also stated that Plaintiff suffered from an inability to complete tasks, was unable to remember or apply information, and could not maintain average pace or focus. Dr. Kuna stated that Plaintiff's limitations most likely began in April 2016.

The ALJ found Dr. Kuna's September 2018 opinion "unpersuasive." R. 163. The ALJ found that Dr. Kuna's opinion was not supported by his own progress notes, noting that Plaintiff's mental status examinations with Dr. Kuna in 2018 were largely normal, except for a flat affect. Plaintiff reported doing well, and Dr. Kuna assessed Plaintiff as stable and made no changes to her medications during those visits. The ALJ also found that Dr. Kuna's opinion was not consistent with Plaintiff's October 2018 consultative examination that showed Plaintiff was alert and oriented, had normal memory, behavior, and affect, and was appropriate and cooperative. Lastly, the ALJ pointed out that Dr. Kuna may not have been responsible for all the information in the medical source statement because progress notes from August and September 2018 stated that Plaintiff's mental health case manager input information into Plaintiff's disability form relating to her impairments, symptoms, and limitations. R. 164 (citing R. 1555 ("[C]ompleted cover letter for medical form for doctor, input [] information into functional assessment form."); R. 1581 ("[C]ompleted faxed work history report for social security appeals. information includes previous jobs, current symptoms of illness and barriers to working. following completion of form input[ ] information into medical summary statement for psychiatrist to assist with disability claim.")).

Plaintiff disagrees with the ALJ's evaluation, arguing that the ALJ cherry-picked the record to support her decision to reject Dr. Kuna's opinion. This Court disagrees.

3

Plaintiff points to several of Dr. Kuna's treatment notes to argue that her mental status examinations contained "multiple abnormalities." Pl.'s Mt. at 6, Dkt. 23. Plaintiff identifies six treatment notes, all of which were specifically addressed by the ALJ. *See* Pl.'s Mt. at 6, Dkt. 23; R. 156–59. As Plaintiff, and the ALJ, point out, these treatment notes largely identify normal mental status examinations relating to her thought process, attention, and concentration despite reports of a flat affect and being "scattered" at times. *See, e.g.*, R. 557, 689. Accordingly, the ALJ did not ignore the abnormalities cited in Plaintiff's treatment records, but instead weighed them against her largely normal mental status examinations. Although Plaintiff may not agree with the significance the ALJ assigned to these mixed findings, Plaintiff "cannot prevail" on a claim of cherry-picking "by arguing that the ALJ improperly weighed the evidence." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020).

Plaintiff also points to these records to argue that the ALJ mischaracterized the record by stating that Dr. Kuna made no changes to Plaintiff's medications. But the ALJ did not state that Dr. Kuna made *no* changes. Instead, just as Plaintiff did in her opening brief, the ALJ identified the treatment notes where Dr. Kuna made medication changes and the dates where no changes were made throughout Plaintiff's treatment but noted that Plaintiff's "medications have been relatively stable since September 2017." R. 162. Contrary to Plaintiff's argument, the ALJ did not mischaracterize the record.

Lastly, Plaintiff argues that the ALJ ignored "multiple abnormalities" identified in treatment records from other providers that supported Dr. Kuna's opinion. Pl.'s Mt. at 7, Dkt. 23.[2] But just as Plaintiff faults the ALJ for cherry-picking the record, that is precisely what Plaintiff is doing with these records. Regardless, many of the records that Plaintiff cites were addressed by the ALJ. For example, Plaintiff points to a December 2018 group therapy note that reported Plaintiff was "highly emotional at times" and reacted to her peer's discussions by sharing her own feelings. Pl.'s Mt. at 7-8, Dkt. 23 (citing R. 1651). The ALJ addressed this record by stating that Plaintiff's mental status examinations since December 2018 were unremarkable except that Plaintiff was occasionally tearful and tangential. R. 159 (citing R. 1650). Again, the ALJ accurately characterized the record where despite Plaintiff's highly emotional state and being tearful at times during group therapy in December 2018, her counselor reported that Plaintiff's thought process was within normal limits, clear, and on topic, and she was collaborative and had positive engagements with both staff and peers. *See* R. 1650.

---

[2] In her reply brief, Plaintiff also challenges the ALJ's decision to discount Dr. Kuna's opinion, in part, because he may not have been responsible for all the information on his medical source statement. Pl.'s Reply at 2, Dkt. 27. Plaintiff argues that the ALJ's reasoning is speculative, and she should have requested clarification. Not only does Plaintiff raise this argument for the first time in her reply brief, but she also has not shown that the ALJ's decision to discount Dr. Kuna's opinion as unsupported and inconsistent with the record requires a remand. *See Martin v. Kijakazi*, No. 21-1920, 2022 WL 1681656, at *3 (7th Cir. May 26, 2022) (unpublished) (finding arguments raised for the first time in a reply brief forfeited); *Osegera v. Kijakazi*, No. 21-CV-3009-CJW, 2022 WL 4298126, at *9 (N.D. Iowa July 14, 2022), report and recommendation adopted, No. 21-CV-3009-CJW-MAR, 2022 WL 3104766 (N.D. Iowa Aug. 4, 2022) (finding that it was a harmless error for an ALJ to misattribute the author of a medical opinion because "[a]fter all, the medical evidence inconsistent with the medical opinion would remain inconsistent").

Even where the ALJ did not specifically address the record cited by Plaintiff, the ALJ did not ignore an entire line of evidence or mischaracterize the status of Plaintiff's mental impairments. *See Gedatus*, 994 F.3d at 901 ("True, the ALJ's summary does not mention every detail. But it need not."); *Dzafic v. Kijakazi*, No. 22-2090, 2023 WL 2536340, at *5 (7th Cir. Mar. 16, 2023) (unpublished) ("It is well-established that an ALJ need not discuss every piece of evidence in the record, so long as she does not ignore an entire line of evidence that supports a finding of disability.") (internal quotation marks and citation omitted). For example, Plaintiff points to a September 2017 treatment note that Plaintiff was "too dysregulated to work with power machinery." Pl.'s Mt. at 7, Dkt. 23 (citing R. 572). Although the ALJ did not specifically address this record, the ALJ identified two treatment notes from September 2017 that similarly showed Plaintiff's mental status examinations were normal except that she was dysregulated because she was grieving the death of her best friend. R. 157 (citing R. 453, 576). The ALJ noted that Plaintiff gradually improved with continued individual therapy. R. 157. For all these reasons, Plaintiff has not shown that the ALJ erred in her analysis of Dr. Kuna's opinion.

**B. Paragraph B Criteria**

Plaintiff also argues the ALJ's determination of her paragraph B criteria when evaluating Listings 12.04, 12.06, 12.08, 12.11, and 12.15 is not supported by substantial evidence because the ALJ failed to consider the episodic nature of her mental impairments. As explained below, the Court finds that the ALJ's determination as to Plaintiff's paragraph B criteria was supported by substantial evidence.

Under these listings, a claimant is presumptively disabled if she meets the paragraph A criteria, which are specific to each listing, and the paragraph B criteria, which apply to all mental impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b). The functional criteria assessed in paragraph B are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* A claimant satisfies the paragraph B criteria if she provides evidence showing an extreme limitation in one area of mental functioning or a marked limitation in two areas of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F2; *see Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (finding that the claimant has the burden of proof).

When evaluating Plaintiff's mental impairments, the ALJ found that Plaintiff had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing himself. R. 149–50. These findings were consistent with the findings of the state agency psychological consultants at the initial and reconsideration levels. R. 112, 130–31.

Although Plaintiff challenges the ALJ's decision as to all four paragraph B criteria, Plaintiff's arguments and citations to the record focus on Plaintiff's ability to interact with others. *See* Pl.'s Mt. at 9–13, Dkt. 23; Pl.'s Reply at 1–2, Dkt. 27. When evaluating Plaintiff's ability to interact with others, the ALJ stated:

5

> Her mental status exams by her treating providers have shown her to have labile, depressed, anxious, irritable, and flat affect and mood at times. However, she interacted appropriately with staff and peers in group therapy, and the consultative examiners consistently found she was cooperative. The claimant testified she tends to isolate, but she also generally gets along with people.

R. 149. Plaintiff does not dispute the accuracy of the records the ALJ relied on that described her appropriate interactions with others or her testimony that she "usually get[s] along with everybody." R. 38. Plaintiff also does not challenge the ALJ's reliance on the state agency psychologists when adopting their finding that Plaintiff was moderately limited in interacting with others. Instead, Plaintiff argues that in evaluating Plaintiff's ability to interact, the ALJ focused on examinations where Plaintiff was appropriate and "ignored the larger picture of the 'worse' mental health days, where plaintiff was not able to regulate her interactions with others." Pl.'s Mt. at 13, Dkt. 23.

Despite Plaintiff's arguments to the contrary, this is not a case where the ALJ overlooked evidence in support of disability or overemphasized Plaintiff's good days. The ALJ thoroughly addressed the evidence in her decision and acknowledged Plaintiff's fluctuating mental health symptoms throughout her treatment, including many of the records that Plaintiff cites to argue that the ALJ ignored her "worse" mental health days. Plaintiff cites a June 2017 treatment note where Dr. Kuna described Plaintiff as "[v]ery labile, laughing one minute and crying the next." Pl.'s Mt. at 10, Dkt. 23 (citing R. 558). This is precisely how the ALJ summarized this record. R. 156 ("In June 2017, Michael Kuna, MD, LPHA, noted the claimant had depressed mood and hyper affect, noting she was very labile, laughing one minute and crying the next."). Plaintiff cites a February 2018 group therapy note where Plaintiff was described as appropriate in group counseling but also defensive and argumentative with staff and a peer. Pl.'s Mt. at 10, Dkt. 23 (citing R. 610). The ALJ addressed this note by stating that Plaintiff "overall followed group norms and respected staff and peers" but also was "defensive and argumentative" with staff and a peer. R. 157. Plaintiff also cites an April 2018 treatment note where Plaintiff told Dr. Kuna that she moved out of her roommate's place because of a conflict over his drug use. Pl.'s Mt. at 11, Dkt. 23 (citing R. 666). The ALJ cited to treatment notes by Dr. Kuna, stating that Plaintiff "was somewhat emotional, but calmed with talking. Her mental status exam was completely normal except for flat affect. She did not report any side effects from her medications and no changes were made." R. 158 (internal citations omitted) (citing R. 666-67). An ALJ does not engage in impermissible cherry-picking when she specifically addresse[s] all the evidence that [Plaintiff] points out" but "d[oes] not assign the significance to it that [Plaintiff] prefers." *Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir. 2010).

Plaintiff also cites to more than one treatment note reporting Plaintiff's struggle with having age-appropriate conversations and expectations with minor children. Pl.'s Mt. at 10–11, Dkt. 23 (citing R. 564, 593, 1661). Although this issue was not specifically addressed by the ALJ, the ALJ did identify that Plaintiff helped her sister at a daycare center until May 2017 and reported doing childcare for her landlord in exchange for rent in August 2018. R. 158. Nevertheless, Plaintiff does not explain how reports that Plaintiff had difficulty with age-appropriate communications with minor children could support a marked or an extreme functional limitation in interacting with others in a work setting.

Although the ALJ did not address every record cited by Plaintiff, the ALJ accurately represented Plaintiff's fluctuating symptoms and generally appropriate interactions with continued therapy. For example, the ALJ considered that in February 2019, although Plaintiff "got angry at a service person," she "was able to use her DBT [dialectical behavior therapy] skills to handle the situation." R. 159 (citing R. 1694). The ALJ also relied on multiple reports throughout 2018 and 2019 where Plaintiff participated in discussions during group therapy and was collaborative and receptive to feedback and suggestions from both peers and staff. R. 163 (citing R. 610, 1415, 1422, 1427, 1547, 1579, 1584, 1590). The ALJ also identified an April 2019 mental health assessment that showed Plaintiff had "irritable, agitated, tearful, upset, and labile affect/mood, had loud and excessive speech, and tangential though process." R. 159 (citing R. 1432). However, despite these symptoms, Plaintiff was still "cooperative throughout the assessment," and Plaintiff reported getting along well with her children. R. 1433. Plaintiff herself testified at the November 2019 hearing that she "usually get[s] along with everybody." R. 38.

The ALJ's evaluation of the paragraph B criteria, namely Plaintiff's ability to interact with others, was adequately explained and supported by substantial evidence. As such, Plaintiff has not shown that the ALJ's paragraph B analysis requires a remand.

## C. RFC

Lastly, Plaintiff argues that the ALJ failed to fully account for her deficits in concentration, persistence, or maintaining pace in the RFC. As explained below, Plaintiff has not shown that the ALJ's mental RFC determination requires a remand.

A claimant's RFC is the maximum work she can perform despite any limitations. 20 C.F.R. § 416.945(a)(1); Social Security Ruling 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 416.945(a)(3); Social Security Ruling 96-8p, 1996 WL 374184, at *5. "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)).

Here, when evaluating Plaintiff's mental functioning at step three, the ALJ adopted the state agency psychologists' opinions that Plaintiff was moderately limited in concentration, persistence, or maintaining pace. The state agency psychologists also opined that Plaintiff was moderately limited in her ability to carry out detailed instructions and maintain attention and concentration for extended periods. R. 117, 135. In the narrative portion of the state agency psychologists' opinions, they explain that Plaintiff's cognitive and attention skills are intact and adequate for simple one- to two-step as well as multi-step tasks, but she is limited in her ability to carry out detailed tasks. R. 118, 136–37. On reconsideration, the psychologist noted that despite Plaintiff's allegations of worsening mental health symptoms, her more recent records showed no signs of depression, agitation, anxiety, or cognitive difficulties, and attention and concentration within normal limits. R. 137. Ultimately, they found that Plaintiff remains capable of "multi-step productive activity w[ith] modified social demand." R. 119, 137.

7

Based on finding Plaintiff moderately limited in concentration, persistence, or maintaining pace and relying on the state agency psychologists' opinions, the ALJ imposed the following mental RFC restrictions: "She can understand, remember, and carry out simple, routine, repetitive tasks and use judgment to make simple work-related decisions. She can have occasional interaction with supervisors and coworkers. She can have brief and superficial interaction with the general public." R. 151.

At the outset, the Court notes that Plaintiff only briefly addresses this argument in her opening brief and abandons it altogether in her reply. *See* Pl.'s Mt. at 14–15, Dkt. 23; Pl.'s Reply, Dkt. 27. Other than Plaintiff's citation to two cases she claims are similar to the instant case, Plaintiff offers no argument in support of a remand. Such an undeveloped and conclusory argument is deemed forfeited. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (finding perfunctory and undeveloped arguments forfeited).

Even without forfeiture, Plaintiff's argument has no merit. As the Commissioner points out, the cases Plaintiff cites to support a remand, *Hoeppner v. Berryhill*, 399 F. Supp. 3d 771, 775–79 (E.D. Wis. 2019) and *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019), did not involve an RFC that adopted all the restrictions recommended by the state agency psychologists to address the claimant's limitations in concentration, persistence, or maintaining pace. The ALJ was entitled to rely upon the opinions of the state agency psychologists when crafting her RFC, *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004), and Plaintiff has not argued that the ALJ erred in doing so. Accordingly, Plaintiff has not shown that the ALJ's mental RFC determination requires a remand.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted. The Commissioner's decision is affirmed.

Date: October 25, 2024        By: *Margaret J. Schneider*
                                                    Margaret J. Schneider
                                                    United States Magistrate Judge